## ARGYLE v. WRIGHT, County Auditor.

No. 4036.    Decided March 7, 1924.    (224 Pac. 649.)

1. COUNTIES—OBJECTION TO AMOUNT OF SURVEYOR'S BOND HELD
   WITHOUT MERIT. Where county commissioners approved a sur-
   veyor's bond, and he entered upon his duties, objection for the
   first time, in a proceeding by the surveyor to compel payment
   of past-due salary, that the amount of the bond was insufficient
   was without merit.

2. COUNTIES—EVIDENCE HELD NOT TO SHOW WILLFUL ABANDONMENT
   OR RESIGNATION OF SURVEYOR'S OFFICE. In a proceeding by a
   county surveyor to compel payment of his salary, evidence *held*
   not to show willful abandonment or resignation from his office.

3. COUNTIES—APPOINTING OF "ROAD ENGINEER" HELD NOT TO SHOW
   APPOINTMENT OF SURVEYOR TO TAKE PLACE OF INCUMBENT. In a
   mandamus proceeding by a surveyor to compel payment of
   salary, proof of appointment of a "county road engineer," who
   did not attempt to qualify as surveyor by filing bond or taking
   constitutional oath, *held* not to show appointment of one to
   act as county surveyor in addition to, or in place of the incum-
   bent.

4. OFFICERS—SALARY OF COUNTY SURVEYOR NOT SUBJECT TO CHANGE
   DURING TERM OF OFFICE. Under Comp. Laws 1917, § 5088, the
   salary of county surveyor for his term of office is fixed by the
   county commissioners before his election, and is not subject
   to change during such term.[1]

---

[1] *Cronquist v. Mathews*, 53 Utah, 582, 174 Pac. 621.

5. OFFICERS—FAILURE TO PERFORM DUTIES AS COUNTY SURVEYOR IN ABSENCE OF REQUEST BY COMMISSION NOT ABANDONMENT OR RESIGNATION OF OFFICE. Failure to perform any duties as county surveyor in the absence of request by the commissioners to perform did not constitute abandonment or resignation from the office.

6. COUNTIES—STATUTES HELD NOT TO AUTHORIZE COMMISSIONERS TO REMOVE COUNTY OFFICER OR DECLARE A VACANCY IN HIS OFFICE. Neither Comp. Laws 1917, § 1451, enumerating county officers, including surveyor, sections 1463, 1619, 1623, enumerating requirements of such offices, and sections 1400x3, 1400x5, authorizing commissioners to supervise officials' conduct and fill vacancies in elective offices, section 8640, providing for removal by court proceeding, nor any other statutes authorize county commissioners to remove a county officer or declare the office vacant; hence the commissioners' powers being purely statutory, they could not remove a county surveyor.

7. COUNTIES—AUDITOR MUST PAY SURVEYOR'S SALARY REGARDLESS OF COMMISSIONERS' CONTRARY ORDER. Under Comp. Laws 1917, § 1547, requiring the auditor to draw warrants for all debts and demands against the county when the amounts are fixed by law, the salary of the county surveyor must be paid, regardless of a contrary order from the commissioners, since it is fixed, and requires no auditing.

8. MANDAMUS—WILL LIE TO COMPEL AUDITOR TO PAY SALARY OF PUBLIC OFFICERS. Mandamus will lie to compel an auditor to draw his warrant in payment of salary due a public officer, under Comp. Laws 1917, § 7392.[2]

Appeal from District Court, Fourth District, Utah County; *G. A. Iverson,* Judge.

Action by Ben E. Argyle for a writ of mandate against Clifford L. Wright, as County Auditor of Utah County. Writ denied and petitioner appeals.

REMANDED, with directions.

*Chase Hatch,* of Provo, for appellant.

[2] *Kendall* v. *Raybould,* 13 Utah, 226, 44 Pac. 1034; *Pratt* v. *Swan,* 16 Utah, 483, 52 Pac. 1092; *Everill* v. *Swan,* 17 Utah, 514, 55 Pac. 68; Id. 20 Utah, 56, 57 Pac. 716.

*M. R. Straw,* of Provo, for respondent.

GIDEON, J.

The plaintiff and appellant brought this action in the district court of Utah county against the defendant and respondent as county auditor of that county, praying for a writ of mandate directing defendant as such auditor to draw his warrant upon the county treasurer in favor of plaintiff for one year's salary as county surveyor, and for an additional sum of $322.86 claimed to be due to plaintiff for certain expenses incurred by him in the performance of his official duties as such surveyor.

Plaintiff alleges his election as county surveyor at the general election held in November, 1918; that thereafter he qualified by filing a bond and subscribing to the constitutional oath of office; that he entered upon his duties as such officer on the 6th day of January, 1919, and was thereafter county surveyor of Utah county until January 3, 1921, at which time his term of office expired; that plaintiff had demanded his salary for the year 1920, and payment had been refused.

In answer to the complaint defendant admitted appellant's election; that the salary as fixed by ordinance of Utah county was $1,000 per year; that no salary was paid to plaintiff during the year 1920; alleged that no salary was due plaintiff for 1920 in any sum. As an additional defense it is alleged that on or about January 1, 1920, plaintiff refused to further act as county surveyor or to maintain an office, and resigned from his office and communicated such resignation and refusal to the board of county commissioners; that such commissioners accepted the resignation and acted upon the same; that plaintiff at no time or at all, during the year 1920, acted or assumed to act as county surveyor; kept no office, and did not, during that year, perform any services whatsoever or pretend to act as county surveyor in any manner or thing whatsoever; that the county commissioners were required to and did contract with another

person to perform the duties of county surveyor. The answer further alleges that plaintiff willfully and intentionally, on or about January 1, 1920, abandoned his office as county surveyor, and that the county commissioners, acting upon the statements and conduct of plaintiff, notified and instructed defendant, as county auditor, to draw no warrant or warrants in favor of plaintiff for salary as county surveyor. The court made findings of fact and conclusions of law, and entered judgment dismissing plaintiff's complaint. Plaintiff appeals.

The court found, among other things, that plaintiff, on or about January 1, 1920, willfully and voluntarily refused to act as county surveyor or to maintain an office as such county surveyor, and did "then and there resign from the office of county surveyor of Utah county, state of Utah, and communicated such resignation and refusal to further act as such county surveyor to the board of county commissioners of Utah county, and that said board * * * acquiesced therein and accepted such resignation, and a vacancy in the office of county surveyor of Utah county was thereby created; that on or about the 1st day of January, 1920, said board of county commissioners ordered the defendant auditor not to pay any further amounts to the plaintiff for acting as such surveyor." The court makes the additional finding that since January 1, 1920, plaintiff, has in no manner acted as county surveyor, and since that date has not or at all "assumed to act as county surveyor, and did not keep or assume to keep any office as such county surveyor, and did not, during the year 1920, perform any duty or service whatsoever as such county surveyor."

The errors assigned assail the findings of the court. Whether the findings of the court quoted find support in the testimony is determinative of this appeal.

It is without dispute that plaintiff was elected county surveyor at the general election held in the year 1918. He qualified and entered upon his duties as such officer on January 6, 1919. Some point is made that the bond filed was not in the amount required by the ordinance of       1

Utah county, but that contention is without substance or merit. The bond filed was approved by the commissioners and no objection was made to plaintiff entering upon his duties as county surveyor by reason of the amount of the bond. That the plaintiff performed the duties of his office during the year 1919 is not seriously in dispute. The only evidence in the record that plaintiff voluntarily resigned or is said to have done anything by which it could be claimed that plaintiff had resigned is a conversation had between plaintiff and one of the commissioners of Utah county in June, 1919, to the effect that plaintiff stated that he could not keep open the office of county surveyor unless the county would furnish him an assistant or deputy. The commissioners refused to furnish plaintiff a deputy. Notwithstanding this conversation, plaintiff did perform other services at the request of the commissioners during the remainder of that year, and received his full salary monthly as such county surveyor for the remainder of the year 1919.

On or about January 1, 1920, the board of commissioners ordered or directed the auditor not to deliver any additional warrants to plaintiff for salary as county surveyor. It does not appear that subsequent to that time plaintiff performed any services as such officer. Neither does it appear that request was made upon him to perform services as such surveyor. It is apparent that during the latter part of the year 1919 and the year 1920 Utah county entered upon an extensive program of road building; and it is likewise apparent that the board of county commissioners for some reason not fully explained in the record, desired the services of another engineer in directing and carrying out this road building program. Accordingly, in June, 1919, the commissioners employed one Scott P. Stewart to perform engineering work as the commissioners directed. No written contract was made between the commissioners and Mr. Stewart at that time. In the early part of 1920 a written contract was made between the commissioners and Engineer Stewart.

We are to determine whether the conduct of plaintiff sup-

ports the court's finding that he wilfully and voluntarily abandoned his office on or about January 1, 1920.

The office of county surveyor is an elective office. Until a vacancy exists in the office of county surveyor the county commissioners have no authority or power to appoint any one to that office. The record does not indicate or disclose that in this case the board of commissioners did in fact appoint or attempt to appoint any one to fill the office of county surveyor. The engineer employed is designated in the record as "county road engineer," or "road engineer." It is not claimed, and there is no evidence to support such a claim, that the engineer employed at any time qualified or attempted to qualify as county surveyor by filing an official bond or subscribing to the constitutional oath of office. The contention on the part of the defendant that the board of county commissioners appointed or named any one to act as county surveyor in addition to or in place of plaintiff therefore lacks any support in the evidence.

The salary of the county surveyor for his term of office is fixed by the county commissioners before his election to that office, and is not subject to change during the term of office. Comp. Laws Utah 1917, § 5088; *Cronquist* v. *Mathews,* 53 Utah, 582, 174 Pac. 621. The road engineer was paid a salary of $175 per month.

Plaintiff was a resident of Utah county during his entire term of office. The proof shows certain temporary absences from the county. Those absences, however, were not sufficient to interfere with his duties as county surveyor.

The record shows that in December, 1919, plaintiff made a report to the commissioners of certain work done by him as county surveyor in establishing the boundary line between Utah county and Carbon county. This work was performed at the request of the commissioners, and apparently the report was approved by the commission. In January, 1920, he applied to the defendant, as auditor, for his salary for that month as such county surveyor, by that act negativing any idea or claim that he had either voluntarily resigned from or abandoned his office.

The theory of the defense seems to be that by reason of the fact that plaintiff was not required to, and did not, during the year 1920, perform any services as county surveyor, he thereby willfully abandoned his office. The fact of failure to perform any duties as such officer in the absence of a request to perform on the part of the commission, under the authorities, in our judgment does not constitute an abandonment of or resignation from the office.

The fifth and seventh headnotes to *State* v. *Huff*, 87 N. E. 141 (172 Ind. 1, 139 Am. St. Rep. 355), are as follows:

(5) "To constitute an 'abandonment' of an office, it must be total, and under such circumstances as to clearly indicate an absolute relinquishment."

(7) "To constitute a 'resignation,' it must be unconditional, and with intent to operate as such. There must be an intention to relinquish a portion of the term of office accompanied by an act of relinquishment. It is to give back, to give up in a formal manner, an office; any act of an officer by which he declines his office, and renounces the further right to its use."

In the opinion of *School Dist.* v. *Garrison*, 90 Ark. 335, 119 S. W. 275, the court says:

"The authorities seem to be in accord in holding that an office cannot be abandoned without the actual intention on the part of the officer to abandon and relinquish the office. The relinquishment of the office must be well defined, and it is not produced merely by nonuser or neglect of duty. The officer must clearly intend an absolute relinquishment of the office; and a removal from the district, if only temporary, would not evince such intention. The nonuser or neglect of duty or removal from the district in order to amount to a vacation of the office must be not only total and complete, but of such a continuance as to make it permanent, and under such circumstances so clearly indicating absolute · relinquishment as to preclude all future questions of fact. Otherwise there must be a judicial determination of the vacancy of the office before it can be so declared"—citing authorities.

"After one has accepted an office, his refusal to serve without good reason is not in itself a forfeiture, but only cause for forfeiture." *Van Orsdall* v. *Hazard*, 3 Hill. (N. Y.) 243.

Tested by the foregoing authorities, can the conduct of plaintiff be held to be a willful abandonment of or resignation from his office as county surveyor?

In our judgment the acts of plaintiff did not warrant the conclusion of finding that he either willfully abandoned the office or that he resigned therefrom. Nor do we think the authorities cited by the defendant (22 R. C. L. § 264; *Attorney General* v. *Maybury*, 141 Mich. 31, 104 N. W. 324, 115 Am. St. Rep. 512; *State* v. *Jones*, 19 Ind. 356, 81 Am. Dec. 403) support the claim of defendant, in view of the admitted facts shown in this record. Plaintiff was a resident of the county during the entire term of his office. It is not shown that he at any time refused to perform any duty requested by the commissioners, unless it can be said that the refusal in June, 1919, to keep the office open without the assistance of a deputy constituted a refusal. No authority is found in the statutes of this state authorizing boards of county commissioners to remove a county officer from office or to declare a vacancy by any act on the part of such commissioners.

"It is quite true, as contended by the county, that the doctrine that county commissioners can exercise such powers only as are expressly or by necessary implication conferred upon them by the statute is elementary." *Carbon County* v. *Hamilton*, 48 Utah, 503, 509, 160 Pac. 765, 768.

Comp. Laws Utah 1917, § 1451, enumerates the county officers, and in the list is county surveyor. Section 1463 provides that the clerks, recorders, and treasurers of all counties except in counties of less than 8,000 population must have their offices at the county seats; and in all counties having a population in excess of 20,000 the clerks, sheriffs, recorders, auditors, treasurers, and attorneys must keep their offices open for the transaction of business from 9 o'clock a. m. to 5 o'clock p. m. Section 1615 defines the duties of a county surveyor as follows:

"The surveyor must make any survey that may be required by an order of court or by the board of county commissioners; keep a correct and fair record of all surveys made by him, in an indexed record furnished by the board of county commissioners, number them in the order made, and preserve a copy of the field notes and calculations of each survey and indorse thereon its proper number, a copy of which, and a fair and accurate plat, together with a certificate, of survey attested by seal of office, must, upon applica-

tion, be furnished by him to any person upon payment of the fees allowed by law. He shall also have power to administer and certify oaths whenever necessary in the discharge of his official duties."

Section 1619 provides that it shall be the duty of the county surveyor to make a survey upon request of any person owning or claiming lands divided by county lines. Section 1623 makes it the duty of the county surveyor, on order of the board of county commissioners, to make all surveys of county roads, road district lines, precinct ánd school district lines that have not already been made and recorded, and perform such other engineering work as the board of commissioners may direct.

It is nowhere provided by statute that the county surveyor shall maintain an office at the county seat or elsewhere. His duties are to perform such work as he may be required to perform by the board of county commissioners, and such other duties as are imposed by the statute.

As stated elsewhere, it does not appear in this case that the board of county commissioners, at any time during the year 1920, requested or ordered the plaintiff to perform any of the services which he was under obligation to perform, or that the commissioners made any request for his services in any way.

Section 1400x3 authorizes the county commissioners to supervise the official conduct of all county and precinct officers, and to see that they faithfully perform their duties, and to direct prosecutions for delinquencies.        6 Section 1400x5 authorizes the county commissioners to fill by appointment vacancies in all elective county, district, or precinct offices, except as otherwise provided by statute. No further provision is made respecting the appointment of a county surveyor to fill a vacancy. Section 8640 provides for the removal of an officer by court proceedings as therein provided who "has knowingly, willfully, and corruptly refused or neglected to perform the official duties pertaining to his office. * * * " Proceedings for the removal of an officer upon these grounds can be instituted by any taxpayer presenting in writing under oath accusation of such refusal or neglect to the district court. The

proceedings provided for in that section seem to be the only method provided for removing an officer for willful neglect or refusal to perform his official duties.

The commissioners being without authority to declare a vacancy, and the conduct of plaintiff not amounting to an abandonment of or resignation from his office, it must logically follow that plaintiff is entitled to the compensation provided for during the term of his office, and that any order upon the part of the county commissioners to the auditor to withhold his salary is beyond the authority of the commission, and is of no force or ffect. Comp. Laws Utah, 1917, § 1547, among other things, provides:

"The auditor must also draw his warrant on the county treasurer for all debts and demands against the county, when the amounts are fixed by law, and which are not directed to be audited by some other person or tribunal."

The salary of the county surveyor is fixed by ordinance, and is not required to be audited or its payment directed by any other person, tribunal or commission. The salary is incident to the office, and the right to receive the same is inherent in any one legally occupying and holding such office. It does not rest within the pleasure or power of the commissioners or any other officer to determine its payment, so long as the incumbent is legally occupying or holding the office.

Some argument is made respecting the payment of a salary to a de facto officer as constituting a defense against the claim of the de jure officer. As indicated elsewhere, there is no proof that any de facto county surveyor was ever appointed or attempted to be appointed by the commissioners.

Respondent asserts that mandamus is not the proper proceeding for the enforcement of plaintiff's right under the circumstances of this case. This court has recognized that mandamus will lie to compel an auditor to draw his warrant in payment of a salary due a public officer under Comp. Laws Utah 1917, § 7391. See *Kendall* v. *Raybould*, 13 Utah, 226, 44 Pac. 1034; *Pratt* v. *Swan*, 16 Utah, 483, 52 Pac. 1092; *Everill* v. *Swan*, 17 Utah, 514, 55 Pac. 68; Id., 20 Utah, 56, 57 Pac. 716.

We are not to be understood as holding that, if any facts were made to appear from the evidence that appellant was not entitled to receive the full compensation provided by law, he could enforce his demand by mandamus. The above authorities do not go to that extent. What we do hold is that it affirmatively appears from the record that appellant was duly elected and qualified as county surveyor of Utah county; that at all times he was a resident of said county and was ready to perform his official duties; that it does not appear in this record that appellant abandoned his office, or that he resigned, or that he at any time refused to perform any official act upon request of the board of county commissioners.

No proof was offered upon the second cause of action found in plaintiff's petition for certain expenses alleged to have been incurred by him in the conduct of his office. That matter is not, therefore, before this court for review.

It follows from what has been said that the district court erred in dismissing the complaint. The cause is therefore remanded to the district court of Utah county, with directions to set aside its order dismissing the complaint, and to proceed in conformity with the views herein expressed. Costs allowed appellant.

WEBER, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.